On Motion for Rehearing.
Appellees, in their argument in support of their motion for rehearing, express the fear that we have been misled by the fact that they did not assign error to the trial judge's instructing the jury that the sale of the stock was invalid, and say that such ruling was without their consent, but not objected to by them because the bank had, up to the time it parted with the title to the note and the pledge, been willing to deliver the same on payment of the note, and Loe had, after his purchase of the note and pledge, always been ready to deliver the stock upon payment of the note. We agree with appellees that the bank was willing up to the time it parted with the stock to deliver it to appellant upon payment by him of his note; but we cannot agree that Loe was always ready, after he acquired the stock and note, to let appellant have the stock upon the mere payment of the note. There is a letter written by him, as well as other evidence, from which a jury could well find that he exacted additional conditions to be performed by appellant in order for the latter to repossess himself of his stock. Appellees contended in their brief that the wrongful sale of the pledge only constitutes conversion when the same is placed beyond the control of the pledgee, and that in this case the appellees did not place the stock out of their reach or control so that they could not redeliver it to appellant upon proper demand. In addition, it was contended that no sufficient tender had been made, and therefore there was no conversion. These contentions both appear to have been predicated upon the theory that the sale of the stock was invalid, but that such sale should be lightly regarded, if not overlooked entirely, while great stress should be given to the fact that the defendants between them always had the stock, and it was within their joint power to produce it, and that King should have made a tender when Loe was present, and, failing to do so, he should not be heard to say that any conversion had taken place. We considered this theory, and found it without merit, but concluded that, if the holding of the stock by Loe inured to the benefit of the bank, then it appeared clear that the bank was chargeable with his assertions of ownership inconsistent with the rights of the pledgor.
Appellants now contend earnestly that the sale to Loe was not void, but merely voidable, and that the legal title to the pledge passed to Loe and the sale to him could not be set aside in a collateral proceeding, but a direct proceeding would have to be instituted for that purpose. They say: "Of course, the bank would probably be bound by the act of Mr. Loe, its president, in making the sale under the pledge if any wrong was committed thereby; but there is no contention in this case, nor is there a scintilla of evidence to the effect, that Loe was purchasing the collateral for the bank or that the transfer of the note to Loe was not a bona fide transaction."
Considering the matter from the standpoint so urged, the stock was put beyond the reach of the bank, and Loe was the only one in whose power it lay to restore the same to King. In other words, as was stated by us in our former opinion, the transaction, so far as the bank is concerned, should be viewed as if the sale had been made to a stranger.
Appellees contend that when the transaction is thus viewed it presents no cause of action in favor of King against either the bank or Loe for conversion, but merely an action to redeem the pledge. They cite a portion of section 748 of Jones on Pledges, *Page 440 
which reads as follows: "An action of trover cannot be maintained by the pledgor to recover the value of stock wrongfully sold by the pledgee without a tender of the debt secured. The wrongful sale of the pledge does not revest the immediate right of possession of the pledge in the pledgor, and therefore the latter cannot maintain the action either for the whole value of the shares or for nominal damages." In the same section the following language occurs: "But in case the pledgee has put the securities beyond his reach by an illegal sale of them, it is said that the pledgor need not make a formal tender of the amount due, nor a demand for the securities, before bringing an action against the pledgee to redeem, or an action for the conversion of the securities." Authorities are cited in support of both propositions. In section 571a of the same work the following language is found: "If a pledgee by an unauthorized sale puts it out of his power to restore the property upon payment or tender of the debt secured, he is liable for its conversion without a demand and tender of performance by the pledgor. `The observation sometimes met with in the opinion of judges, and in text-books, that the pledgor is at liberty to treat an unauthorized sale of the pledged property as a conversion by the pledgee, must be taken to refer to such a sale as puts the property beyond the control of the pledgee. In cases of that kind the pledgor may charge the pledgee as for a conversion of the property without demand or tender of performance, though he is not bound to do so, but may, by subsequent tender and demand, require the pledgee to account for the market value of the property at that time. And, of course, it is not the right of the pledgee to insist that his wrongful sale constitutes a conversion, for that would enable him, if he were allowed to do so, to take advantage of his own wrong, and by his own violation of the contract determine the time, and thus the measure of his liability for its breach.'" The quoted portion is taken from the case of Glidden v. Bank, 53 Ohio St. 588, 42 N.E. 995, also reported in 43 L.R.A. 737 with valuable and thorough notes by the editor bearing upon the various questions arising in suits for conversion by reason of invalid sales by pledgees.
The same rule is announced by the editor of L R. A. in vol. 6 (N.S.) p. 299, under the case of Austin v. Vanderbilt, 48 Or. 206, 85 P. 519,120 Am.St.Rep. 800, 10 Ann.Cas. 1123, decided by the Oregon Supreme Court, in which the court said: "The pledgee impliedly agrees faithfully to hold the pledge until the conditions have been performed upon the faith of which the choses in action, goods, or personal chattels have been delivered to him. If, in violation of his trust, he sells or disposes of the pledge, thereby putting it out of his power to return the property, it would be useless to impose upon the pledgor the burden of tendering to the pledgee the payment of the debt, or the performance of the duty before he could maintain an action against the pledgee for the damages sustained by reason of the conversion, when it would be impossible for the latter to discharge the obligation which he had undertaken. When a pledgee, by his overt act, violates the terms of his agreement, so that it cannot be specifically enforced, he necessarily severs the fiduciary relations he assumed towards the pledgor, whose remedy against him in this form of an action for the injury sustained, though treated as one for conversion, is in reality founded on the breach of the contract."
To hold that a tender is necessary before any rights can be asserted by the pledgor, after a sale by the pledgee, would mean that, if the pledgor was unable to pay the money or tender the same, he would be deprived of remedy, though the sale was made in gross violation of the duty which the law imposes upon the pledgee, namely, to exercise his control of the pledge so as to subserve the interests of the pledgor as well as his own. The cases from our courts cited in our former opinion are in line with the authorities which do not require the useless formality of a tender when a conversion has already taken place and has been announced by the pledgee, or when it is beyond the power of the pledgee to restore the pledge.
Appellees do not question the correctness of the Texas cases which hold that a claim of absolute ownership by the pledgee constitutes conversion, nor do they directly challenge the correctness of the decisions that a sale without authority to a stranger may be treated by the pledgor as a conversion and suit brought without tendering the amount due, but seek to make a distinction between such cases and this on the ground that authority was given the bank to make a sale of King's stock at private sale without notice. They contend that such a sale, even though wrongfully and fraudulently made, is merely a violation of the duty imposed by law to conduct the sale fairly and in good faith, and that the action is one for breach of contract, and the only remedy the setting aside of the sale upon payment of the debt.
We cannot subscribe to such a doctrine. To so hold would mean that a bank could, under such a contract, when the debt is due, sell the collateral for a few dollars to its employés, without an effort to comply with its duty to seek to obtain a fair price, and thus appropriate the same to the use of third persons who would be entitled to hold the same until the pledgor paid off his debt. Such a sale constitutes the exercise of dominion over the pledge inconsistent with the relations the pledgee justly sustains thereto, and the pledgor may treat the same as a conversion. In this case, if King's testimony is true, he was, by Loe's language and actions, lulled into a feeling of security on the very *Page 441 
day that his stock was sold, and permitted to believe it would not be sold without giving him a few days' time.
While appellees do not directly challenge the correctness of the decisions holding that an unauthorized sale to a stranger may be treated as a conversion and suit maintained without a tender, yet the cases and doctrine upon which they rely are those which are not in accord with said decisions, but announce the rule that before an action for trover can be brought the immediate right of possession must be vested in the pledgor by the payment or tender of the amount due by him. Appellees state the contention as follows: "Before it could be held that he (King) was entitled to maintain an action for conversion, it would have to be held that the bank, by reason of the sale, had destroyed the lien given to secure its debt and that neither it nor Loe had any lien on the property." This technical rule relied upon by appellees would prevent the pledgee in all cases from suing for conversion unless he had paid the debt or tendered the amount thereof. When an unauthorized sale is made, the lien is not destroyed, nor is it destroyed by an assertion of ownership by the pledgee, or by his claim of right to hold it as security for other debts. It therefore appears to us that while appellees are seeking to distinguish this case from those where an unauthorized sale is made, or a claim of absolute ownership, the rule relied upon to do so would destroy the correctness of the holdings in those cases.
Where a person buys pledged stock and his knowledge extends only to the fact that the same is a pledge, nothing but a suit to redeem, with tender of amount due, could be brought against him. Cook on Stock 
Stockholders Corporation Law, § 472. Loe does not occupy such a position. He knew all the facts and circumstances, and if the sale to himself was wrongful he is guilty of conversion, and can be sued therefor without any tender of the amount due on the debt. His subsequent or separate purchase of the note given by King cannot entitle him to the rights he would have had if the note had been sold him and the stock merely accompanied the same as collateral.
The motives actuating appellant in suing for conversion instead of to redeem the stock are vigorously assailed by appellees; it being charged that he is seeking to assert a claim for $8,000 for stock worthless at the time it was sold. If the stock was worthless, appellant has suffered no injury, and it should not be assumed that he will recover if such be the case, but he is entitled to have the issue tried, and, should it develop that his stock was deliberately and wrongfully sold for a grossly inadequate price without any effort to procure the real value, he is within his rights in choosing his remedy.
The motion is overruled.